# EXHIBIT B

# SECURITY SERVICES AGREEMENT

This Security Services Agreement ("Agreement") is entered into as of January 1, 2004 (the "Effective Date") by and between (i) MillsServices Corp., Management Associates Limited Partnership and Milpitas MSC, L.L.C., each as "Managing Agent" for the entities listed in <u>Exhibit A</u> attached hereto, having an address at 1300 Wilson Boulevard, Suite 400, Arlington, VA 22209 (collectively, "Owner") and (ii) Mydatt Security Services Inc. dba Valor Security Services, having a principal place of business at 200 North Cobb Parkway, Suite 128, Marietta, GA 30062 ("Contractor") (Owner and Contractor collectively referred to as the "Parties").

In consideration of the covenants and agreements entered herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, do hereby agree as follows:

## ARTICLE 1
## SCOPE OF WORK

1.1     <u>Services Generally</u>.  Contractor shall provide security services for each of the retail developments listed on **Exhibit A** attached hereto (each a "Shopping Center" and collectively the "Shopping Centers"), as set forth more specifically in this Agreement and on **Exhibit B** attached hereto (the "Services").  Contractor shall not perform services outside the scope of work set forth herein without the prior written authorization of Owner.  All Services shall be performed in a first-class, workmanlike manner and shall meet industry standards.

1.2     <u>Records</u>.  Contractor shall maintain complete and detailed records in connection with the Shopping Centers concerning its policies, the Services and any personnel and materials associated therewith.  Contractor shall maintain all records and accounts pertaining to services provided by Contractor under this Agreement, as authorized by Owner, for a period of two (2) years after the end of the term of this Agreement.  Owner shall have the right to audit, copy and inspect said records and accounts at all reasonable times during the course of such work and for the above two (2) year period for the sole purpose of verifying the accuracy of all invoices.

1.3     <u>Hours of Service</u>.  Contractor shall maintain an adequate staff of employees at the Shopping Centers to provide around-the-clock Services as specified in **Exhibit B**.  Owner shall provide post/patrol schedule forms in blank and Contractor shall assign Contractor personnel to meet the mutually agreed scheduling requirements.  Contractor shall provide Owner completed schedule forms designating the post/patrol assignments no later than 9:00 a.m. on the Monday proceeding each work week.  The Security Console at the Shopping Centers shall be staffed 24 hours a day, 7 days a week.  Owner shall not be billed any overtime or other added costs occasioned as a result of Contractor's inability to meet Owner's staffing requirements.  Contractor shall ensure that no officer work more than twelve (12) consecutive hours in any one day whether on the work site or at another client of Contractor's or, to the best of Contractor's knowledge, at any other job during a twenty-four (24) hour period, except in the event of emergency.

1.4     <u>Equipment</u>.    Contractor shall provide all equipment it shall use in the performance of the Services except those items listed on **Exhibit B**, which shall be provided by Owner.  All equipment supplied and used by Contractor shall be in good working condition and of the proper capacity to provide the Services in an expeditious and efficient manner.  Contractor will ensure that its employees keep the equipment provided by Owner in good condition at all times and Contractor shall replace any such equipment that is damaged in connection with

1

Contractor's use thereof. There will be no substitution of quantity or capacity of equipment without prior approval of Owner. The type and amount of equipment to be used must be approved by Owner prior to commencement of any Services.

## ARTICLE 2
## PERSONNEL

2.1    <u>Independent Contractor</u>. The Parties will be and act as independent contractors, and under no circumstances will this Agreement be construed as creating an agency, partnership, joint venture or employment between the parties. The Contractor employees performing services at the Shopping Centers (the "Staff") will not be deemed to be employees of Owner or any affiliate thereof (Owner and its affiliates are collectively referred to in this paragraph as "Mills"). The Staff is not authorized to enter into any contracts or agreements on behalf of Mills or to otherwise create obligations of Mills to third parties. Contractor shall be responsible for and shall maintain adequate records of expenses it shall incur in connection with the Staff. Contractor shall be responsible for payment of all applicable workers' compensation, disability benefits and unemployment insurance as applicable and for withholding and paying such employment taxes and income withholding taxes as required with respect to the Staff. Contractor agrees that the Staff are not employees of Mills for any purpose, including, without limitation by specification: (i) for federal, state or local tax, employment, withholding or reporting purposes; or (ii) for eligibility or entitlement to any benefit under any of Mills' employee benefit plans (including, without limitation, those that are subject to the Employee Retirement Income Security Act of 1974, as amended), incentive, compensation or other employee programs or policies ("Mills Benefit Plan"). Contractor agrees that all such personnel shall be informed that they are employees solely of Contractor and not eligible to participate in any Mills Benefit Plan. In the event that any federal, state or local government or administrative agency, or other regulatory entity, or any court determines that a member of the Staff acted as an employee of Mills in performing the Services, Contractor:  (i) waives any and all claims that Contractor may have against Mills as a result of any such determination and acknowledges that Contractor agreed to render the Services under this Agreement with the understanding that neither Contractor nor any member of the Staff has any right or entitlement to any benefit under any Mills Benefit Plan; and (ii) agrees to indemnify and hold Mills harmless from all liabilities and reasonable costs and expenses (including, but not limited to, attorney's fees) incurred by Mills as a result of, or related to, such a determination.

2.2    <u>Qualifications</u>. Contractor shall be responsible for the employment, pre-assigned certification and scheduling of security personnel who shall meet the professional quality and technical accuracy standards that are satisfactory to Owner. Contractor shall not employ security personnel to perform services at a Shopping Center who are not eligible for security guard registration under the laws of the state in which such Shopping Center is located.

2.3    <u>Drug Testing; Criminal Background</u>.    Contractor shall administer pre-employment criminal background checks including without limitation (to the extent allowed by law) periodic random drug testing to Contractor's employees who will be assigned to the Shopping Centers and will assign its employees to the work site only after they have passed a five panel drug test. Contractor shall notify Owner if any security personnel to be used on the work site have been convicted of a felony within the last seven (7) years or who have been convicted of any crime; provided, however, that possession or use of this information by Contractor or Owner does not violate any federal, state, or local laws or regulations.

2.4    <u>Supervision</u>.  All employees of Contractor shall be subject to the direction, supervision, and control of Contractor.  Contractor shall be solely responsible for (i) all means, methods, techniques, and results of the services provided hereunder; and (ii) all acts and omissions of all agents and employees of Contractor.  Contractor shall enforce strict discipline and good order among its employees at all times and shall be fully responsible for the proper conduct and appearance of its employees while on Shopping Center premises.

2.5    <u>Removal of Employees</u>.  Contractor shall suspend any employee for just cause upon the receipt of a written   request by Owner, for remedial action.  Owner agrees to give Contractor a reasonable period of time not to exceed (5) five days from the receipt of such request stating specific dissatisfactions with the performance of the employee. Contractor shall perform a through and complete investigation and shall take the appropriate disciplinary action up to and including termination. Contractor shall immediately notify Owner of results of investigation and / or action taken.  Notwithstanding the foregoing, Owner shall have the right to require Contractor to permanently relieve any of its employees from his or her duties at the Shopping Center. Employees of Contractor who are not on-duty are not allowed on the work site.

2.6    <u>Employee Performance Issues</u>.  Owner shall not participate in Contractor's individual personnel performance evaluations or any other matter pertaining to the employer/employee relationship. Owner shall report Contractor's employee's performance problems or misconduct to Contractor, but Owner shall not participate in any disciplinary action involving Contractor's employees.

2.7    <u>Unemployment Compensation and Social Security</u>.  Contractor accepts and assumes full and exclusive liability for the payment of contributions pursuant to the wages of its employees required by the Unemployment Compensation Laws of the state in which each Shopping Center is located, Federal Social Security Act, and any other State and Federal laws as to all employees engaged in the performance of work subject to this Agreement.  Contractor further agrees that all of its subcontractors will observe and comply with the foregoing provisions, all of which shall be specifically set forth in each subcontract.

2.8    <u>Back-up Personnel</u>.  Unless specifically agreed to by on-site management of a particular Shopping Center, Contractor shall provide backup personnel for its employees in the event of illness, disability, vacation, leave, or absence for any reason.  Back-up personnel shall be trained in and cover all duties and responsibilities of Contractor's regular on-site personnel with no disruption in service. Contractor shall ensure that back-up personnel meet the requirements of this Agreement. The need for and provision of back-up personnel shall be communicated in as much advance as practicable by Contractor to on-site Shopping Center Management.

2.9    <u>Additional Personnel</u>.  In the event of an emergency or upon request by Owner, Contractor shall use its best efforts to provide up to three (3) additional security personnel per Shopping Center (in addition to personnel ordinarily assigned to each Shopping Center).  Such general emergencies may include, but are not limited to, civil disorders, bomb threats, fires, earthquakes, or any such causes, natural or man-made, which may require additional protection of Owner's employees or property.  In the event that Contractor is required to provide additional security personnel, Owner shall pay Contractor the overtime rate as described in **Exhibit E** of this Agreement for a period of time not to exceed thirty (30) days after the beginning of the emergency service for each security officer.  Overtime billing shall be limited to emergency services other than normal hours.  Contractor shall not bill Owner for overtime for security personnel on regular assignment during an emergency unless such personnel work beyond their normal shift.

2.10    <u>Appearance</u>.  Contractor shall provide full uniform and proper equipment to personnel assigned to Shopping Center premises.  Standard foul weather gear (jackets or raincoats) and winter coats shall be supplied when needed.

2.11    <u>Rules of Conduct</u>.  Contractor shall provide copies of Contractor's Rules of Conduct to all its employees and inform its employees that such rules shall apply while they are on Shopping Center premises.  Contractor's Rules of Conduct are attached as **<u>Exhibit C</u>**.

2.12    <u>Training</u>.  Contractor shall provide each security officer a minimum of sixteen (16) hours of both classroom training and on-the-job training at Contractor's office, which shall be located at each center, prior to assignment at a Shopping Center work site.  Such training shall be provided at no cost to Owner and shall consist of subjects acceptable to Owner, including, but not limited to, the following: report writing, legal authority, communication methods (telephone and radio equipment), patrols, bomb threat response, fire fighting equipment use, and the ethical responsibilities of security personnel to clients.  Prior to any job assignment, Contractor's staff or supervision shall accompany new security personnel while on Shopping Center premises. Contractor shall ensure that all security officers are knowledgeable and familiar with all site and post procedures and cross-trained in these post procedures. The console security officers will receive 40 hours of on-the-job training before being released for duty.   A certified trainer acceptable to Owner will conduct all training.

2.13    <u>Staffing Levels.</u> Contractor will guarantee that the agreed upon weekly staffing levels will be maintained within (+) plus or (-) a factor of five percent (5%).  Such percentage shall be computed over a (12) twelve month calendar period.  Any and all billing shall not exceed one hundred percent (100%) of approved staffing levels as described in the attached **<u>Exhibit E</u>** with or without prior approval by "Manager".

### ARTICLE 3
### TERM

The term of this Agreement shall commence on the Effective Date and shall expire on January 31, 2007, unless terminated earlier in accordance with the provisions of this Agreement (the "Term").   Notwithstanding the foregoing, Owner shall have the right to terminate this Agreement, either solely with respect to a particular Shopping Center(s) or with respect to the entire Agreement (at Owner's election), at any time upon thirty (30) days' prior written notice to Contractor.  Services shall commence at each Shopping Center in accordance with the timetable set forth in **<u>Exhibit D</u>** attached hereto, as may be modified by the Parties.

### ARTICLE 4
### COMPENSATION

4.1    <u>Generally</u>.  Owner shall pay Contractor for contractor's performance of the Services the fees detailed in **<u>Exhibit E</u>** attached hereto (the "Fees").   Rates are established on an hourly basis and reflect a fixed, all-inclusive fee for the hours of Services anticipated in this Agreement. Contractor shall not be entitled to increase Fees due to Contractor's inability to fill assignments with personnel other than those already on assignment or those needed immediately preceding their normal shift.  On a bi-weekly (i.e., every other week) basis, Contractor shall submit an invoice to Owner for services performed during such period and Owner shall pay Contractor within forty-five (45) days of the date of the invoice, except in the event Owner does not receive

such invoice within ten (10) days of the date thereof, in which case Owner shall pay Contractor within thirty (30) days of Owner's receipt of such invoice. Each invoice shall set forth the number of hours worked by each of Contractor's employees during the bi-weekly period and the total Fee due to Contractor, in accordance with the provisions set forth on **Exhibit E**.

     4.2    <u>Volume Discount Scale</u>. Contractor will provide the following discount levels to Owner and such discounts shall be reflected on each individual center's bi-weekly invoice. These discount(s) shall apply exclusively to the Volume Discount for services performed and shall not in any manner apply to any and all billing(s) for health insurance.

| Exclusive Provider: 100% of portfolio | 5.5% Total Discount |
|---|---|
| 50% of portfolio | 4.0% Total Discount |
| 33% of portfolio | 3.0% Total Discount |
| Each Center | 2.0% Total Discount |

The percentage of portfolio will be determined by the percentage of total weekly service hours for all properties.

     4.3    <u>Pricing Review</u>. Owner and Contractor understand and agree to an annual pricing review for good and valuable consideration of now-current rates.

     4.4    <u>Rent Expense</u>. Owner agrees that it shall reimburse Contract for rent expenses it incurs at the Shopping Centers. For calendar year 2004, such expenses shall be as set forth on the attached **Exhibit E-1**. Such reimbursement shall be billed by Contractor and paid by Owner on a bi-weekly basis.

<div align="center">

**ARTICLE 5**
**INSPECTION; VISITS**

</div>

Owner and all persons appointed by it shall have the right to inspect any part of the Services. Contractor shall, upon request, report on the progress of the materials furnished, and the labor performed under or pursuant to this Agreement. Contractor shall appoint a duly accredited representative to attend meetings at such place, or places, as shall be decided by Owner, in order to render reports on the progress of the Services performed under this Agreement. Owner shall provide to Contractor on-the-job post and patrol instructions, and shall monitor compliance therewith by Contractor. Owner security specialists shall be entitled to determine whether Contractor personnel comply with such instructions by conducting post and patrol inspections on a periodic basis to monitor performance and appearance. Notwithstanding the foregoing, Owner shall not participate in Contractor's individual personnel performance evaluations or other matters pertaining to the employer/employee relationship Contractor has with its employees. A Contractor management representative responsible for each Shopping Center account shall visit the property as needed but no less than on a weekly basis for the purpose of conducting in-service training programs, inspection of personal appearance, and administering employer/employee related matters. In the event an on-site supervisor is not already present, Contractor shall have its local office management respond to Owner or Contractor employee request(s) promptly at any hour.

5

C:\Documents and Settings\jcutler\Local Settings\Temporary Internet Files\OLK23\security service global agreement Valor v.5.doc

## ARTICLE 6
## TAXES; PERMITS

Contractor shall pay all sales, consumer, use and other similar taxes required by law. Contractor shall, at its own expense, secure all permits, fees, and Contractor licenses necessary for the performance of the Services under this Agreement, and shall provide copies thereof to Owner. Contractor shall comply with all state and or local regulations regarding the licensing or registration of its employees.

## ARTICLE 7
## PROTECTION OF PERSONS AND PROPERTY



7.1     Safety Precautions.  Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Services and for ensuring that all Contractor's employees operate under such precautions and programs.  Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to persons and property.  Contractor shall provide suitable safety appliances as may be needed to safely provide security services.  Contractor shall perform all services in accordance with Owner's work site security procedures and policies in effect and shall ensure that all visitors comply with such security procedures and policies.

7.2     Protection of Property.  Contractor shall ensure that its employees do not remove any property from a Shopping Center premises without Owner's written permission. Upon the departure of a Contractor employee or upon an earlier request by Owner, Contractor shall ensure that its employee has returned all Owner's property to Owner unless Contractor has obtained Owner written permission to retain the property. In the event Contractor is unable to secure the return of Owner's property from departing Contractor employees, Contractor shall be responsible for making diligent effort to effectuate the return of the property and for reimbursing Owner for the value of the property if, due to negligence of Contractor, the property is not returned or replaced.

## ARTICLE 8
## CONFIDENTIALITY; COOPERATION

8.1     Confidentiality.   Contractor warrants that it shall require that Contractor's employees keep any private, confidential or proprietary information that may become available to them as a result of their assignment with Owner in confidence and not disclose such information to any third party. Contractor shall require that each Contractor employee assigned to work at a Shopping Center execute an individual copy of **Exhibit F**, "Confidentiality Agreement." Contractor shall ensure that its employees agree not to make any unauthorized use or disclosure, during or subsequent to their assignment at a Shopping Center, of any knowledge or information (including without limitation information regarding any security incidents occurring at such Shopping Center or any other Shopping Center) to which said Contractor's employee is exposed, or observes or which is generated or otherwise acquired by them during their assignment at a Shopping Center. Any confidential information received by Contractor's employees shall be held in trust and confidence by them and Contractor, and shall not be disclosed without the prior written consent of Owner. Contractor shall not make or use any copies, synopses, or summaries of oral or written material, photographs or any other documentation or information its obtains or has access to at a Shopping Center, or otherwise made available or supplied by Owner to Contractor, unless authorized in writing by Owner. Contractor warrants and represents that it has, through agreements with its employees or otherwise, the right and power to effect the foregoing

obligations. Owner retains all rights and remedies afforded it under the patent and other laws of the United States and the states thereof which are designated to protect proprietary or confidential information.

8.2    Cooperation.    Contractor agrees that Contractor and its employees, upon reasonably prompt prior written notice to Contractor by Owner, shall cooperate fully with Owner, Owner and any affiliate thereof, specifically including any attorney retained by Owner, Owner or its affiliate, in connection with any pending or future litigation or investigatory matter involving matters related in any way to any of the Shopping Centers. This cooperation may include without limitation, being available for interviews, providing copies of any documents relating to the Services, and providing truthful sworn testimony, in the form of an affidavit, declaration, deposition, or otherwise, at the request of Owner, Owner or an affiliate, all without the necessity of any service of formal process. For proceedings that do not fall under Contractor's indemnity obligations per Section 9.1 of this Agreement, Owner and Contractor understand and agree that should Contractor's employees be required for sworn testimony for any or all reasons described herein and should Contractor be required to pay additional wages for such individuals for time spent engaged in compliance with this clause, Contractor shall have the right to bill Owner at the appropriate current bill rate for exactly the time spent by any and all individuals engaged in any and all cooperative activities described herein.

## ARTICLE 9
## INDEMNITY

Contractor shall indemnify, defend and hold the parties listed on **Schedule A** attached hereto, and their respective affiliates, officers, directors, partners, employees, agents and assigns harmless from any and all claims, demands, liability, damages, loss, costs and expenses, of any nature or kind, including attorneys fees, assessed against or incurred by such indemnified party(ies) arising directly or indirectly from or in any way relating to, or alleged to arise from or relate to, in whole or in part, the Services or the materials, supplies, tools and labor provided in connection therewith (including without limitation, claims relating to excessive use of force, unlawful detainment, act of discrimination or humiliation and mental anguish by Contractor or Contractor's employee(s), or bodily injury (including death) to any person, or property damage or both), or any activity of Contractor, its agents, employees and subcontractors, except that such obligation shall be reduced (i) to the extent adjudicated to have been caused by the negligence, gross negligence or willful misconduct of an indemnified party and/or (ii) to the extent adjudicated to have been caused by the reduction of hours of Service by Contractor as specifically directed by Owner. Contractor and Owner understand and agree that should Owner request a reduction of hours of Service, Owner shall provide Contractor with a written request of the reduction of hours no less than ten (10) days prior to the date of the commencement of the reduction of hours. The indemnification obligation under this Article shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Contractor or any subcontractor under Workmen's Compensation Acts or Disability Benefit Acts or other employee benefit acts.

## ARTICLE 10
## INSURANCE

10.1    Coverages.    During the Term of this agreement, and at all times that Contractor performs services at a Shopping Center, Contractor shall maintain in full force and effect, at Contractor's sole expense, insurance coverage to include:



7

(a)     Worker's Compensation insurance as required by law, including Employers Liability in the amount of $500,000 each accident, $500,000 per person for disease, $500,000 policy limit for disease.

(b)     Commercial General Liability insurance protecting against any and all claims for injury to persons or property and protecting against assumed or contractual liability under this agreement, with limits not less than $1,000,000 per occurrence and $2,000,000 annual aggregate combined single limit per occurrence for bodily injury, personal injury and property damage.

(c)     Automobile Liability insurance with limits not less than $1,000,000 per occurrence, including liability for owned, non-owned and hired automobiles.

(d)     Umbrella/Excess Liability insurance in an amount not less than $10,000,000 per occurrence, and aggregate, providing coverage excess of Contractor's Commercial General Liability, Automobile Liability and Employers Liability insurance.

(e)     Insurance providing coverage for not less than Five Million Dollars ($5,000,000) for misdeed, theft and other wrongdoing of employees or agents of Contractor performing Services at such Shopping Center.

10.2    <u>Policy Requirements</u>. All insurance policies herein to be procured by Contractor shall: (i) be issued by insurance companies reasonably satisfactory to Owner and authorized to do business in the state; (ii) be written as primary policy coverage and non-contributing with respect to any coverage which Owner may carry; (iii) with respect to Contactor's Commercial General Liability and Automobile Liability insurance, include the parties listed on **Schedule A** attached hereto as additional insureds on a per-Shopping Center basis. Neither the issuance of any insurance policy required hereunder, nor the minimum limits specified herein with respect to Contractor's insurance coverage, shall be deemed to limit or restrict in any way Contractor's liability arising under or out of this Agreement. With respect to each and every one of the insurance policies herein required to be procured by Contractor, on or before the commencement date and before any such insurance policy shall expire, Contractor shall deliver to Owner a certificate of insurance, providing evidence that such policy has been issued, indicating the coverage required by Section 10.1, and containing provisions specified herein. Each and every insurance policy required to be carried hereunder by or behalf of Contractor shall provide (and any certificate evidencing the existence of each such insurance policy shall provide) that, unless Owner shall first have been given thirty (30) days' prior written notice thereof, the insurer will not cancel, materially change or fail to renew the coverage provided by such insurance policy.

10.3    <u>Separate Obligation</u>. The obligations contained in this Article 10 are separate and distinct from all other obligations set forth in this Agreement, and are in no way intended to merely support Contractor's duty to indemnify set forth in Article 9 of this Agreement.

## ARTICLE 11
### RIGHTS AND REMEDIES

11.1 <u>Default</u>. The failure of either Party to perform or fulfill any term, obligation or covenant under this Agreement shall be a default. In the event of any default in this Agreement, the non-defaulting party shall have the right, at is election, to terminate this Agreement either solely with respect to the applicable Shopping Center(s) or with respect to the entire Agreement, upon written notice to the defaulting Party.

11.2 <u>Cost and Fees</u>. In the event either Party files a suit to enforce this Agreement or any of the provisions contained herein, the Party prevailing in such action shall be entitled to recover, in addition to all other remedies or damages, attorneys' fees, court costs and other related costs and expenses incurred in such suit, and if any judgment is secured by the non-defaulting Party all such costs, expenses and fees shall be included in such judgment.

11.3 <u>Cumulative Remedies</u>. Either Party may pursue any damages or loss sustained by such Party as a result of the other Party's default under the terms of this Agreement. The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies. Such rights and remedies are given in addition to any other rights the parties may have by law, statute, and invoices or otherwise.

## ARTICLE 12
### ASSIGNMENTS AND SUCCESSORS

12.1 <u>Assignment; Subcontracting</u>. Contractor shall not subcontract any part of the Services without first obtaining the written approval of Owner; and the approval of Owner shall not release Contractor from any responsibility or liability in connection with said subcontract. Any assignment or attempt to assign any part of Contractor's interest in the Services or in monies due or which may become due to Contractor under this Agreement shall be void and of no force and effect unless prior thereto Contractor shall have obtained the written consent of Owner.

12.2 <u>Successors</u>. This Agreement and every covenant and provision hereof shall bind, apply to and run in favor of the Parties and their successors in interest, and legal representatives.

## ARTICLE 13
### LIENS

Contractor covenants and agrees with Owner, that neither Contractor, nor any of its subcontractors, materialmen, laborers, or other persons whosoever, shall file a mechanics' lien for work done or materials furnished. If at any time there shall be evidence of any lien or claim for which, if established, Owner might become liable, and which might, in any event, be chargeable to Contractor, Owner shall have the right to retain out of any payment due or thereafter to become due an amount sufficient to completely indemnify Owner against such lien and attorney's fees in connection therewith. Should there prove to be any such lien or claims after all payments are made, Contractor shall repay Owner all sums which Owner may be compelled to pay in discharging or otherwise disposing of such lien or claim.

# ARTICLE 14
## LAWS

14.1    <u>Governing Laws</u>.  This Agreement shall be construed, governed and enforced in accordance with the laws of the Commonwealth of Virginia.

14.2    <u>Compliance with Law</u>.   Contractor agrees that its work and materials shall comply with all laws, ordinances, orders, rules, regulations and requirements of all Federal, State and Municipal governments and appropriate departments, boards and officers thereof, and of the insurance organization having jurisdiction thereof.   Contractor further agrees to indemnify and hold Owner harmless from and against any claims for failure to comply with the above provisions.

# ARTICLE 15
## NOTICE

All notices, demands, requests or other instruments which may be or are required to be given hereunder shall be in writing and sent to Contractor or Owner at the addresses set forth in this Article, by hand delivery, certified mail - return receipt requested, or via overnight courier, and shall be deemed sufficient notice and demand in any case arising under this Agreement.  Each party may give notice to the other party of a change of its address for the purposes of giving notice under this paragraph which thereafter, until changed by a like notice, shall be the address of such party for all purposes of this Agreement.

Owner:                              MillsServices Corp.
                                    Management Associates Limited Partnership
                                    Milpitas MSC, L.L.C.
                                    1300 Wilson Boulevard, Suite 400
                                    Arlington, VA 22209
                                    Attn: V.P., Risk Management

With copies sent to:                The Mills Corporation
                                    1300 Wilson Boulevard, Suite 400
                                    Arlington, VA  22209
                                    Attn:  Legal Department

Contractor:                         Valor Security Services
                                    200 North Cobb Parkway, Suite 128
                                    Marietta, GA 30062

With copies sent to:                Valor Security Services
                                    7135 Charlotte Pike, Suite 100
                                    Nashville, TN 37209
                                    Attn:  Contract Management

## ARTICLE 16
## HEADINGS

The headings in this Agreement are inserted for convenience only and in no way are intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

## ARTICLE 17
## MODIFICATION

This Agreement shall not be modified by any oral agreement, or by any implied agreement or custom, and no waiver by Owner of these provisions shall be deemed to have been made, unless in writing.

## ARTICLE 18
## WAIVER

A waiver by Owner of any of the terms and conditions of this Agreement, in any one instance, shall not be deemed or construed to be a waiver of such terms or conditions for the future, or any subsequent breach thereof.

## ARTICLE 19
## ENTIRE AGREEMENT

This Agreement, including any exhibits hereto, contains all the agreements, conditions and understandings made between the Parties, and supersedes all written or oral agreements between them with respect to the matter.

## ARTICLE 20
## AUTHORITY

Contractor and each individual executing this Agreement on behalf of Contractor hereby represents and warrants that such individual is duly authorized to execute and deliver this Agreement on behalf of Contractor, that Contractor is duly authorized to enter into this Agreement, and that this Agreement is enforceable against said entity in accordance with its terms. Contractor shall deliver to Owner upon request evidence of such authority satisfactory to Owner.

## ARTICLE 21
## MANAGING AGENT

MillsServices Corp. is the duly authorized managing agent for the parties listed on **Exhibit A** (the "MSC Owners"). This Agreement is entered into and executed solely on behalf of the MSC Owners by MillsServices Corp. as its managing agent. MillsServices Corp. shall have no liability for any failure by the MSC Owners to perform any covenant, term or condition of this Agreement. Contractor understands and agrees that it shall only have recourse against the MSC Owners and not MillsServices Corp. for any failure by the MSC Owners to perform any covenant, term, or condition of this Agreement.

Milpitas MSC, L.L.C. is the duly authorized managing agent for Milpitas Mills Limited Partnership (the "Milpitas Owner"). This Agreement is entered into and executed solely on behalf of

the Milpitas Owner by Milpitas MSC, L.L.C. as its managing agent. Milpitas MSC, L.L.C. shall have no liability for any failure by the Milpitas Owner to perform any covenant, term or condition of this Agreement. Contractor understands and agrees that it shall only have recourse against the Milpitas Owner and not Milpitas MSC, L.L.C. for any failure by the Milpitas Owner to perform any covenant, term, or condition of this Agreement.

<div align="center">

**ARTICLE 22**
**<u>COUNTERPARTS</u>**

</div>

This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

<div align="center">

[signatures appear on following page(s)]

</div>

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

**OWNER**:

MillsServices Corp.
Managing Agent for the Parties listed on <u>Exhibit A</u>

By: _____    _____ (General Manager)
Its: _____    _____ (Regional Manager)


Management Associates Limited Partnership
Managing Agent for the Parties listed on <u>Exhibit A</u>

By:     Mills Management, L.L.C.
        its General Partner

By: _____    _____ (General Manager)
Its: _____    _____ (Regional Manager)


Milpitas MSC, L.L.C.
Managing Agent for the Parties listed on <u>Exhibit A</u>

By:     MillsServices Corp., its Manager

By: _____    _____ (General Manager)
Its: _____    _____ (Regional Manager)


**CONTRACTOR**:

Mydatt Services Inc. dba Valor Security Services

By: _____
Its: _____

## SCHEDULE A

### INDEMNIFIED PARTIES/ ADDITIONAL INSUREDS

**ARIZONA MILLS:** MillsServices Corp., Arizona Mills, L.L.C., Arizona Mills SPE, L.L.C., The Mills Corporation, The Mills Limited Partnership, The Taubman Realty Group Limited Partnership and GMAC Commercial Mortgage Corporation.

**ARUNDEL MILLS:** Arundel Mills Limited Partnership, Arundel Mills Finance, L.L.C., The Mills Corporation, The Mills Limited Partnership, Kan Am USA XIX Limited Partnership, Kan Am USA XVIII Limited Partnership, MillsServices Corp., Bayerische Hypo- Und Vereinsbank AG and Morgan Stanley Mortgage Capital, Inc., and their successors and assigns (as Lenders)

**ARUNDEL MILLS MARKETPLACE:** Arundel Mills Marketplace Limited Partnership; The Mills Corporation; The Mills Limited Partnership; Kan Am USA XIX Limited Partnership; Kan Am USA XVIII Limited Partnership; Kan Am USA Tier II Limited Partnership; MillsServices Corp.; Wells Fargo Bank, N.A., its successors and assigns.

**BROWARD MALL:** Management Associates Limited Partnership, Broward Mall Limited Partnership, The Mills Limited Partnership, The Mills Corporation, Westdeutsche ImmobilienBank, its successors and assigns.

**CINCINNATI MILLS:** Management Associate Limited Partnership, Cincinnati Mills, L.L.C., The Mills Corporation, The Mills Limited Partnership, U.S. Bank National Association.

**COLORADO MILLS:** MillsServices Corp., Colorado Mills Limited Partnership, Mills-Kan Am Colorado Limited Partnership, Colorado Mills Residual Limited Partnership, Mills-Kan Am Colorado Residual Limited Partnership, The Mills Corporation, The Mills Limited Partnership, Kan Am USA XX Limited Partnership and Fleet National Bank, as Administrative Agent for Lenders.

**CONCORD MILLS:** MillsServices Corp., Concord Mills Mall Limited Partnership, Concord Mills Mall GP, L.L.C., The Mills Corporation, The Mills Limited Partnership, Kan Am USA XVIII Limited Partnership, Kan Am USA XXI Limited Partnership and JP Morgan Chase Bank and Commerzbank AG, New York Branch, and their successors and assigns (as Lenders).

**CONCORD MILLS MARKETPLACE:** Concord Mills Marketplace Limited Partnership; The Mills Limited Partnership; The Mills Corporation; Management Associates Limited Partnership; Key Bank Real Estate Capital, its successors and assigns (Lender).

**DEL AMO FASHION CENTER:** Del Amo Mills Limited Partnership, Del Amo Mills, L.L.C., The Mills Corporation, The Mills Limited Partnership, Management Associates Limited Partnership, Archon Financial LP, its successors and assigns (as Lender).

**DISCOVER MILLS:** MillsServices Corp., Sugarloaf Mills Limited Partnership, Sugarloaf Mills, L.L.C., Sugarloaf Mills Residual Limited Partnership, Sugarloaf Mills Residual, L.L.C., The Mills Corporation, The Mills Limited Partnership, Kan Am USA XIX Limited Partnership, Eurohype A.G., New York Branch, its successors and assigns (as Lending Agent).

**DOVER COMMONS:** Management Associates Partnership, Dover Commons Limited Partnership, The Mills Limited Partnership, The Mills Corporation, Archon Financial, L.P., Goldman Sachs Mortgage Company, CT Investment Management Company and successors and assigns.

**DOVER MALL:** Management Associates Limited Partnership, Dover Mall Limited Partnership, The

Mills Limited Partnership, The Mills Corporation, Archon Financial, L.P., Goldman Sachs Mortgage Company, CT Investment Management Company and successors and assigns.

**FRANKLIN MILLS:**  Management Associates Limited Partnership, Franklin Mills Associates Limited Partnership, Franklin Mills, L.L.C., Franklin Mills GP, Inc., The Mills Corporation, The Mills Limited Partnership and Midland Loan Services, Inc. (as Trustee for Lenders).

**GALLERIA AT WHITE PLAINS:**  Management Associates Limited Partnership, White Plains Galleria Limited Partnership, White Plains Galleria Operating Company, L.L.C., The Mills Limited Partnership, The Mills Corporation, Archon Financial, L.P., Goldman Sachs Mortgage Company, CT Investment Management Company and successors and assigns.

**GRAPEVINE MILLS:**  MillsServices Corp., Grapevine Mills Limited Partnership, Grapevine Mills Operating Company, L.L.C., The Mills Corporation, The Mills Limited Partnership, Kan Am USA XV Limited Partnership, Kan Am USA Tier II Limited Partnership and Midland Loan Services, Inc. (Servicer for Lenders).

**GURNEE MILLS:**  Management Associates Limited Partnership, Gurnee Mills Operating Company, L.L.C., The Mills Corporation, The Mills Limited Partnership and Secore Financial Corporation and assigns (Lender).

**KATY MILLS:**  MillsServices Corp., Katy Mills Mall Limited Partnership, Katy Mills Mall GP, L.L.C., The Mills Corporation, The Mills Limited Partnership, Kan Am USA XVII Limited Partnership and Morgan Stanley Dean Witter Mortgage Capital Inc. and its successors and assigns (as Lender).

**LIBERTY PLAZA:**  Management Associates Limited Partnership, Liberty Plaza Limited Partnership, Liberty Plaza, L.L.C., The Mills Limited Partnership, The Mills Corporation, Midland Loan Services, Inc. (as Trustee for Lenders).

**GREAT MALL OF THE BAY AREA:**  Milpitas Mills Limited Partnership; The Mills Limited Partnership; The Mills Corporation; Milpitas MSC, L.L.C.; WestWind Great Mall Management, LP; Kan Am Kapitalanlagegesellschaft mbH; Merrill Lynch Mortgage Lending, Inc., its successors and assigns (Lender).

**MADRID XANADU:** Madrid Xanadu 2003, S.L.; Madrid Xanadu 2004, S.L.; Parque de Nieve Madrid, S.L.; Mills Global Services of Spain, S.L.; Mills Global Services Corp.; Bayerische Hypo und Vereinsbank AG, and their successors and assigns (as Lenders)

**NORTHPARK MALL:**  Management Associates Limited Partnership, Northpark Mall Limited Partnership, The Mills Limited Partnership, The Mills Corporation, Archon Financial, L.P., Goldman Sachs Mortgage Company, CT Investment Management Company and successors and assigns.

**OPRY MILLS:**  Management Associates Limited Partnership, Opry Mills Operating Company, L.L.C., Opry Mills Manager, L.L.C., The Mills Corporation, The Mills Limited Partnership and JP Morgan Chase Bank, its successors and assigns.

**POTOMAC MILLS:**  Management Associates Limited Partnership, Potomac Mills Operating Company, L.L.C., The Mills Corporation, The Mills Limited Partnership and Secore Financial Corporation and assigns (Lender).

**RIVERSIDE SQUARE:**  Riverside Square Limited Partnership, The Mills Limited Partnership, The Mills Corporation, Management Associates Limited Partnership, Lehman Brothers Holdings, Inc., its

successors and assigns (as Lender).

**SAWGRASS MILLS/ THE OASIS:** Management Associates Limited Partnership, Sunrise Mills (MLP) Limited Partnership, The Mills Corporation, The Mills Limited Partnership, Sawgrass Mills Phase II Limited Partnership, Sawgrass Mills Phase III Limited Partnership, and LaSalle Bank National Association as Trustee for Sawgrass Mills Trust Commercial Mortgage Pass-Through Certificates, Series 2001-XLSGM, c/o Wells Fargo Bank, N.A. as Servicer.

**ST. LOUIS MILLS LIMITED PARTNERSHIP:** St. Louis Mills Limited Partnership, St. Louis Mills Residual Limited Partnership, The Mills Limited Partnership, The Mills Corporation, MillsServices Corp., Kan Am USA XX Limited Partnership, Fleet National Bank, its successors and assigns (as Lender).

**THE BLOCK AT ORANGE:** Orange City Mills Limited Partnership; Orange City Mills Mall GP, L.L.C.; Orange City Mills Mezzanine Limited Partnership; Kan Am USA XVI Limited Partnership; Kan Am USA XIV Limited Partnership; Kan AM USA XII Limited Partnership; The Mills Limited Partnership; The Mills Corporation; MillsServices Corp.; JPMorgan Chase Bank, its successors and assigns (Lender)

**THE ESPLANADE:** Management Associates Limited Partnership, Esplanade Mall Limited Partnership, The Mills Limited Partnership, The Mills Corporation, Archon Financial, L.P., Goldman Sachs Mortgage Company, CT Investment Management Company and successors and assigns.

## EXHIBIT A

## OWNER ENTITIES AND SHOPPING CENTERS

MillsServices Corp. has executed this Agreement as managing agent for:

| Ownership Entity | Shopping Center |
|---|---|
| Arizona Mills, L.L.C. | Arizona Mills, Tempe, AZ |
| Arundel Mills Limited Partnership | Arundel Mills, Hanover, MD |
| Arundel Mills Marketplace Limited Partnership | Arundel Mills Marketplace, Hanover, MD |
| Colorado Mills Limited Partnership | Colorado Mills, Lakewood, CO |
| Concord Mills Mall Limited Partnership | Concord Mills, Concord, NC |
| Sugarloaf Mills Limited Partnership | Discover Mills, Lawrenceville, GA |
| Grapevine Mills Limited Partnership | Grapevine Mills, Grapevine, TX |
| Katy Mills Mall Limited Partnership | Katy Mills, Katy, TX |
| Ontario Mills Limited Partnership | Ontario Mills, Ontario, CA |
| St. Louis Mills Limited Partnership | St. Louis Mills, Hazelwood, MO |

Management Associates Limited Partnership has executed this Agreement as managing agent for:

| Ownership Entity | Shopping Center |
|---|---|
| Broward Mall Limited Partnership | Broward Mall, Plantation, FL |
| Cincinnati Mills, L.L.C. | Cincinnati Mills, Cincinnati, OH |
| Concord Mills Marketplace Limited Partnership | Concord Mills Marketplace, Concord, NC |
| Del Amo Mills Limited Partnership | Fashion Center at Del Amo, Torrance, CA |
| Dover Commons Limited Partnership | Dover Commons, Dover, DE |
| Dover Mall Limited Partnership | Dover Mall, Dover, DE |
| Esplanade Mall Limited Partnership | The Esplanade, Kenner, LA |
| Franklin Mills Associates Limited Partnership | Franklin Mills, Philadelphia, PA |
| Gurnee Mills Operating Company, L.L.C. | Gurnee Mills, Gurnee, IL |
| Liberty Plaza Limited Partnership | Liberty Plaza, Philadelphia, PA |
| Northpark Mall Limited Partnership | Northpark Mall, Ridgeland, MS |
| Opry Mills Operating Company, L.L.C. | Opry Mills, Nashville, TN |
| Potomac Mills Operating Company, L.L.C. | Potomac Mills, Woodbridge, VA |
| Riverside Square Limited Partnership | Riverside Square, Hackensack, NJ |
| Sunrise Mills (MLP) Limited Partnership | Sawgrass Mills, Sunrise, FL |
| Sawgrass Mills Phase III Limited Partnership | The Oasis at Sawgrass Mills, Sunrise, FL |
| White Plains Galleria Limited Partnership | Galleria at White Plains, White Plains NY |

Milpitas MSC, L.L.C. has executed this Agreement as managing agent for:

| Ownership Entity | Shopping Center |
|---|---|
| Milpitas Mills Limited Partnership | Great Mall of the Bay Area, Milpitas, CA |

## EXHIBIT B

### SCOPE OF WORK

**STANDARD SERVICE REQUIREMENTS:**

Contractor shall:

1. At Shopping Center management's request provide up to three (3) extra officers within four (4) hour notice.

2. Notify Shopping Center management immediately of any change to schedules or deadlines.

3. Ensure security personnel can demonstrate professional use of hand held radios.

4. Assist Shopping Center in its overall risk management program by helping to ensure no cameras are brought on site without the appropriate approvals.

5. Ensures no one enters through a card access door without using his/her access card properly.

6. Assist Shopping Center in its overall risk management program by helping to ensure that all Shopping Center employees, tenants, vendors, visitors and or contractors enter by access card system or sign in and out each time they access the site after normal business hours and on weekends/holidays.

7. Assist Shopping Center in its overall risk management program helping to ensure that all trucks/vehicles entering/exiting shipping and receiving areas are authorized, monitored and logged.

8. Assist Shopping Center in its overall risk management program helping to maintain a safe and neat work environment at all times.

9. Ensure that all security personnel use telephones in accordance with Shopping Center standards and make no personal calls or unauthorized long distant telephone calls.

10. Ensure that all security personnel are trained and will respond to emergency situations as required.

11. Provide a minimum of one CPR and First Aid certified security officer on every shift, to be trained at Shopping Center's expense.

12. Ensure security personnel create well-written incident reports, complete all necessary logs and forms.

13. Ensure all security personnel speak, understand, read and write English fluently.

14. Ensure all security personnel possess at least a high school diploma or GED.

15. Ensure security personnel raise and lower flags on site each day except during inclement weather.

16. Ensure the Security Console is staffed at all times, without exception, with well trained experienced security personnel.

17. Limit security personnel to consecutive working shifts of no more than twelve (12) hours, except in the event of emergency.

18. Work with Shopping Center management to address Shopping Center procedural issues.

19. Provide 100% coverage of all posts at all times.

20. Provide Shopping Center management with the opportunity to approve all security personnel candidates prior to being assigned to the site.

21. Interview all applicants thoroughly, providing them with Shopping Center security expectations, and conduct thorough background investigations on security personnel including criminal conviction history.

## EQUIPMENT SUPPLIED BY OWNER

Radios
Radio chargers
Master key rings
Office furniture
Photocopy machines
Facsimile machines
Barricades
*Handcuffs/Training
*Baton/Training
*Pepper Spray/Training
*AEDs/Training

*These items may not be used at all individual properties. If used, Contractor Agrees to purchase these items and supply appropriate training. Billing for these items/training will be billed to the individual centers and shall be a direct pass-through cost.

## EXHIBIT C

### RULES OF CONDUCT

These Rules of Conduct for Contractor's employees have been developed to provide an appropriate standard of conduct for contract employees.  It is Contractor's responsibility to ensure the proper and safe conduct of their employees while they are on Shopping Center property.  Shopping Center management personnel will report to Contractor any violation of these Rules for appropriate action.  Each Contractor employee assigned to the Shopping Center will be given a copy of these Rules of Conduct at the time of employment so there is no misunderstanding of the requirements.

EMPLOYEES OF CONTRACTOR SHALL NOT:

1. Possess firearms, explosive materials, knives, or other weapons while on Shopping Center property.

2. Fail to notify the Contractor's office when unable to report for work or when tardiness is expected.

3. Be under the influence of drugs or alcoholic beverages while on Shopping Center property.

4. Sleep while on duty.

5. Smoke at the Shopping Center.

6. Gamble while on duty.

7. Abandon a post or assignment.

8. Perform acts of dishonesty.

9. Loiter on Shopping Center property at any time when not on duty.

10. Refuse to obey on-the-job instructions or post assignments as directed by Supervisory Officers or authorized Shopping Center personnel.

11. Solicit funds or attempted sale of any article while on Shopping Center property.

12. Engage in disorderly conduct.

13. Engage in inefficient or careless performance, neglect of duties or insubordination.

14. Display or distribute obscene material or political literature of any kind on Shopping Center property.

15. Fail to observe safety practices, including traffic regulations.

16. Damage, or attempt to damage property of Owner or any other party.

17. Use Shopping Center equipment, including personal use of Shopping Center telephones, without authorization to do so.

18. Appear for work without proper attire.

19. Engage in immoral or indecent conduct.

20. Fraternize with or soliciting favors from Shopping Center employees or visitors.

21. Open desks or file cabinets without direct authorization from Owner.

22. Fail to render first aid to anyone in need, or ignoring persons in need of assistance

23. Read, listen to radios or watch television on duty without specific authorization.

**EXHIBIT D**
**TIMETABLE FOR COMMENCEMENT OF SERVICE PER SHOPPING CENTER**

| | |
|---|---|
| St. Louis Mills: | 1/1/04 (continuation of prior service) |
| Cincinnati Mills: | 1/1/04 (continuation of prior service) |
| Broward Mall: | 1/1/04 (continuation of prior service) |
| Northpark Mall: | 1/1/04 (continuation of prior service) |
| The Block at Orange: | 1/22/04 |
| Colorado Mills: | 1/22/04 |
| Grapevine Mills: | 1/22/04 |
| Katy Mills: | 1/22/04 |
| Opry Mills: | 1/22/04 |
| Arundel Mills/Marketplace: | 1/29/04 |
| Discover Mills: | 1/29/04 |
| Potomac Mills: | 1/29/04 |
| Concord Mills/Marketplace: | 1/29/04 |
| ✓ Franklin Mills/Liberty Plaza: | 1/29/04 |
| Gurnee Mills: | 1/29/04 |
| Sawgrass Mills/Oasis: | 1/29/04 |
| Del Amo Fashion Center: | 2/12/04 |
| Great Mall of Bay Area: | 2/12/04 |
| Arizona Mills: | Tentative date of 2/15/04 |
| ✓ Ontario Mills: | Tentative date of 2/15/04 ✓ |
| Dover Mall/Commons: | 2/19/04 |
| Esplanade: | 2/19/04 |
| White Plains: | 2/26/04 |
| Riverside Square: | 2/26/04 |

Ex.D-1

**EXHIBIT E**

**COMPENSATION**

**[see attached]**

# Dover Mall/Dover Commons

**Pricing**

To provide security services to Dover Mall/Dover Commons in Dover, Delaware, the following pay rate and bill rate scale would apply:

| Wage Rate | Bill Rate | Wage Rate | Bill Rate |
|---|---|---|---|
| $ 8.00 | $11.50 | $10.35 | $14.59 |
| $ 8.25 | $11.83 | $10.50 | $14.78 |
| $ 8.50 | $12.16 | $10.75 | $15.11 |
| $ 8.75 | $12.48 | $11.00 | $15.44 |
| $ 9.00 | $12.81 | $13.63 | $18.90 |
| $ 9.25 | $13.14 | $14.00 | $19.38 |
| $ 9.50 | $13.47 | $20.19 | $26.83 |
| $ 9.75 | $13.80 | $21.15 | $28.06 |
| $10.00 | $14.13 | $22.12 | $29.30 |
| $10.25 | $14.46 | | |

\* Annual Estimate:

| Position | Wage Rate | Bill Rate | | Weekly Hours | x | Number Weeks | = | Annual Cost |
|---|---|---|---|---|---|---|---|---|
| Manager | $20.19 | $26.83 | x | 40 | x | 52 | = | $ 55,806.40 |
| Asst. Manager | $13.63 | $18.90 | x | 40 | x | 52 | = | $ 39,312.00 |
| Supervisor | $10.50 | $14.78 | x | 40 | x | 52 | = | $ 30,742.40 |
| Supervisor | $ 9.75 | $13.80 | x | 40 | x | 52 | = | $ 28,704.00 |
| Officer | $ 9.00 | $12.81 | x | 40 | x | 52 | = | $ 26,644.80 |
| Officer | $ 8.00 | $11.50 | x | 308 | x | 52 | = | $184,184.00 |
| Total | | | | | | | = | $365,393.60 |
| 5.5% Discount /Rent | | | | | | | = | <$ 20,096.10> |
| Total Annual Estimate | | | | | | | = | $345,287.50 |

\*Annual Estimate is based on specified weekly hours and wage rates.  Estimate does not include vehicles, radios, group medical or sales tax if applicable.

Account Manager rates are salaried based on 40 hour work weeks and include all corporate management benefits.

The above pricing is based on approximately 508 hours per week security and includes the following:

- Dedicated salaried Account Manager

- Tenant Safety Awareness Program

# Dover Mall/Dover Commons
**Pricing**
**(Page 2)**

- Safety and Loss Prevention Seminars

- All management and administrative cost

- All recruiting, screening and hiring expense

- Pre-employment and random drug screening

- Cost of training and state certification

- All payroll and associated expense

- Uniforms

- Workers Compensation and General Liability Insurance

- Pentium Computer/Valor Multi-media Training Software

*Additional coverage hours requested by Dover Mall will be billed at standard bill rates with one week advance notice, additional coverage hours without one week advanced notice, will be billed at 1-1/2 times the standard bill rate.

* Holiday pay and bill rates will be 1-1/2 times the normal rate (Holiday's listed below)

**Holidays:** New Year's, Easter, Memorial Day, 4th of July, Labor Day, Thanksgiving, Christmas

**Standard Benefits:**
- Vacation: one week vacation after one year; two weeks after three years
- 401 – K Plan
- Attendance Bonuses ($50.00 per Qtr.)
- Referral Bonuses
- Group Medical Plan Available
- Dental Plan Available

**\* Any accrued vacation of existing employees would be billed at individual's bill rate only when days are taken and only with approval of Dover Mall management.**

**Vehicle Option:** *(includes lease, insurance, fuel, maintenance and repairs)*
- Toyota Rav-4:        $1,454.00/per month
- Jeep Liberty:        $1,481.00/per month
- Ford Escape         $1,488.00/per month
- Ford Explorer        $1,666.00/per month
- Ford Ranger:         $1,339.00/per month

# Dover Mall/Dover Commons
### Pricing
### (Page 3)

**Bike Patrol:** *(includes bike, uniforms, equipment and maintenance)*
- Bicycle                    at cost

**Group Medical Plan:**
The following costs are the actual monthly premiums for each category listed.  A percentage of these costs can be payroll deducted with the remainder billed to your center on a monthly basis.  The percentage that each party pays will be a decision of your center.

| | |
|---|---|
| Single Coverage: | $299.47 |
| W/Dependent: | $602.79 |
| W/Spouse: | $751.06 |
| W/Family: | $836.81 |

50% of family or single coverage premiums of existing Mills or SSD employees will be billed to the center as a separate line item expense with 50% payroll deducted.  For any new employees electing coverage, 50% of the single premium will be billed to the center and the remainder will be payroll deducted, regardless of the type of coverage selected.

**EXHIBIT F**

**CONFIDENTIALITY AGREEMENT**

As a contract security employee assigned by my employer, Valor Security Services, to perform services at ______________________________ (print name of Shopping Center) (the "Shopping Center"), I agree as follows:

1. I will not, at any time, reproduce, disclose or use any Confidential Information, unless such reproduction, disclosure or use is first approved by the management of the Shopping Center.

2. I will not engage in, and will use my best efforts to prevent others from engaging in, unauthorized reproduction, disclosure or use of any Confidential Information.

3. I will not disclose to management of the Shopping Center any confidential information belonging to others, nor will I use such confidential information in the course of carrying out my work at the Shopping Center.

4. All tangible Confidential Information obtained in the course of my work for the Shopping Center shall be surrendered by me to the management of the Shopping Center upon termination of my work for the Shopping Center (unless earlier requested by management of the Shopping Center). I will not retain any copies, reproductions, notes or samples of the same. This Section 4 shall not apply to personal files that do not contain Confidential Information.

5. My obligations under this Agreement shall continue for a period of two (2) years beyond the conclusion of my services for the Shopping Center and shall be binding on my heirs, assigns, and legal representatives for such period. If any obligation of this Agreement is held to be too broad to be enforced, it shall be construed to be enforceable to the full extent permitted by law. This agreement is for the benefit of the owner of the Shopping Center, the manager of the Shopping Center, their affiliates, successors and assigns, and is not conditioned on employment for any period of time or compensation therefor.

6. The term "Confidential Information" shall mean any information obtained by me in any manner through, during or otherwise in connection with my performance of the Services (including without limitation information regarding any security incidents occurring at the Shopping Center or other shopping centers managed by the manager of the Shopping Center or its affiliates).

| | |
|---|---|
| I have read and understand this Agreement. | I have witnessed the adjacent signature. |
| Signature __________________________ | Signature __________________________ |
| Print Name _________________________ | Print Name _________________________ |
| | Date ______________________________ |