Westlaw.

Not Reported in A.2d                                                                                                                     Page 1
Not Reported in A.2d, 2004 WL 3030014 (Del.Super.)
**(Cite as: 2004 WL 3030014 (Del.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Susan M. VANDIEST, Plaintiff,
v.
Elisa SANTIAGO and Harrington Realty Inc., Defendant.
**No. Civ.A.02C-06-003 WLW.**

Submitted Nov. 19, 2004.
Decided Dec. 9, 2004.

Upon the Parties' Cross-Motions for Summary Judgment. Denied.

Benjamin A. Schwartz, of Schwartz & Schwartz, Dover, Delaware; for the Plaintiff.

Douglass Lee Mowrey, of Bouchelle & Palmer, Newark, Delaware; for Defendant Elisa Santiago.

C. Scott Reese, and Noriss E. Cosgrove, of Cooch and Taylor, Wilmington, Delaware; for Defendant Harrington Realty, Inc.

ORDER

WITHAM, J.

**\*1** Before this court are three motions for summary judgment filed by Harrington Realty Inc. ("Defendant") and one motion for partial summary judgment filed by Susan M. Vandeist ("Plaintiff"). Upon consideration of the parties' briefs and the oral arguments that were presented to this Court on November 19, 2004, and for the reasons set forth below, both parties' motions for summary judgment are denied.

Plaintiff has filed an action against the Defendant and Elisa Santiago ("Co-Defendant") as a result of a slip-and-fall accident that occurred on April 20, 2001 at the Plaintiff's residence which she was renting from the co-defendant. Plaintiff alleges that a Harrington Real Estate agent, Mr. Clarence Burris, assisted with the property management functions at the residence where this incident occurred. Thus, through an agency relationship, Plaintiff contends that the Defendant is liable for any injury as a result of Mr. Burris' negligent conduct. [FN1]

> FN1. Alleged negligent acts include 1) failure to maintain the premises in a safe condition, 2) failure to secure, maintain, and repair the entranceway of the premises and failure to secure, maintain, and repair the handrail to the stair of the premises when the Defendant knew or should have known that the entranceway and the defective handrail created a dangerous condition, 3) failure to give any notice or warning of the dangerous condition to lessees when the defendant knew or should have known that the entranceway coupled with a defective handrail was dangerous, 4) failure to take adequate and reasonable precautions to protects its tenants, including the Plaintiff, from a dangerous condition existing as a result of the entranceway area and the defective handrail; and 5) it was otherwise negligent.

Defendant has filed three motions for summary judgment. Defendant's first motion for summary judgment contends that there is no evidence indicating that Mr. Burris was the property manager of the 728 West South Street residence ("728 Residence"), the location where the alleged slip-and-fall accident occurred. Because there is no evidence to suggest that Mr. Burris managed the property, Defendant contends that summary judgment is appropriate because the Plaintiff has failed to produce any evidence that would establish Mr. Burris owed a duty to her. Defendant's second motion for summary judgment contends that Mr. Burris was not an employee of Harrington Realty Inc. Even if this Court finds that Mr. Burris was an employee of Harrington Realty Inc., Defendant contends that Mr. Burris' services as property manager was outside the course and scope of his employment. Accordingly, Defendant contends that summary judgment is appropriate because any liability as a result of Mr. Burris' negligent conduct cannot be imputed onto the Defendant. Defendant's third motion for summary judgment contends that summary judgment is appropriate because the Plaintiff cannot establish the local standard of care. In short, Defendant claims that the sole expert retained by the Plaintiff is not qualified to testify to the standard of care owed by a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                           Page 2
Not Reported in A.2d, 2004 WL 3030014 (Del.Super.)
**(Cite as: 2004 WL 3030014 (Del.Super.))**

Delaware property manager. Plaintiff has also filed a motion for partial summary judgment requesting this Court to find that Mr. Burris was an employee of Harrington Realty, Inc. and was acting within the course and scope of his employment while functioning as a property manager for the 728 residence.

Pursuant to Superior Court Civil Rule 56(c), a judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [FN2] On a motion for summary judgment, the initial burden is on the moving party to show that there are no material issues of fact. [FN3] If the moving party is successful, the burden then shifts to the nonmoving party to demonstrate that a genuine issue of material fact exists. [FN4] After viewing the record in a light most favorable to the nonmoving party, this Court will grant a motion for summary judgment only when there are no genuine issues of material fact. [FN5] Further, the Delaware Supreme Court has stated that "[a] motion for summary judgment is properly granted 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial .' " [FN6] However, summary judgment will be denied if it appears that a more thorough inquiry into the facts is warranted in order to clarify the application of the law to those facts. [FN7]

>    FN2. Super. Ct. Civ. R. 56.
>
>    FN3. Martin v. Nealis Motors, Inc., 247 A.2d 831, 833 (Del.1968).
>
>    FN4. Id.
>
>    FN5. Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc., 312 A.2d 322, 325 (Del.Super.Ct.1973); see also McCall v. Villa Pizza, Inc., 636 A.2d 912 (Del.1994).
>
>    FN6. Reybold Group, Inc. v. Chemprobe Technologies, Inc., 721 A.2d 1267, 1270-71 (Del.1998)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).
>
>    FN7. See Morgan v. State Farm Mutual Automobile Insurance Co., 402 A.2d 1211 (Del.Super.Ct.1979).

*2 Defendant's first motion for summary judgment contends that the Plaintiff has failed to produce any evidence that indicates Mr. Burris was the property manager of the 728 residence and thus owed a duty to the Plaintiff. In support of her contention, Defendant asserts that there was no agency agreement between Mr. Burris and the co-defendant and no compensation was paid to Mr. Burris or the Defendant for any services rendered. In opposition to Defendant's motion, Plaintiff asserts that there is sufficient evidence that suggests Mr. Burris was the property manager of the 728 residence. In particular, Plaintiff claims that Mr. Burris provided the lease, conducted the lease signing at his office, was involved in the rent collection, and arranged and directed repair work to be performed at the 728 residence.

Based upon the parties' briefs and the record before this Court, it appears that the Plaintiff has produced some evidence that would support a finding that Mr. Burris was the property manager of the 728 residence and therefore owed a duty to the Plaintiff. There is also a material dispute of fact as to the extent of Mr. Burris' involvement with the 728 residence. Because the Plaintiff has produced some evidence that a reasonable jury could conclude Mr. Burris was the property manager and because a material dispute of fact still exists, summary judgment is inappropriate and therefore Defendant's first motion for summary judgment is denied.

Defendant's second motion for summary judgment contends that summary judgment is warranted because Mr. Burris is an independent contractor and not an employee of Harrington Realty Inc. In the alternative, even if Mr. Burris is found to be an employee of the Defendant, his performance as property manager for the 728 residence was outside the course and scope of his employment. Accordingly, any liability as a result of Mr. Burris' negligent actions cannot be imputed onto the Defendant through an agency relationship. Plaintiff has also filed a motion for partial summary judgment requesting this Court to find that Mr. Burris was an employee of Harrington Realty Inc. and was working within the course and scope of his employment as a property manager for the 728 residence.

Determining whether the Defendant can be liable for the negligent conduct of Mr. Burris requires this Court to determine whether there was an agency relationship between the parties. If Mr. Burris is held to be an employee of Harrington Realty Inc., then the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2004 WL 3030014 (Del.Super.)  
**(Cite as: 2004 WL 3030014 (Del.Super.))**

Page 3

Defendant will be liable for any negligent conduct that occurred within the course and scope of his employment through the doctrine of *respondeat superior*. [FN8] On the other hand, an employer will generally not be liable for the negligent acts of an independent contractor. [FN9] However, "if the owner's or contractee's control or direction dominates the manner or means of the work performed, the non-agent status of the independent contractor can be destroyed and the independent contractor becomes an agent capable of rendering the principal vicariously liable for the acts of the independent contractor." [FN10] Accordingly, if this Court concludes that Mr. Burris is not an employee but rather an independent contractor, this Court must further determine whether Mr. Burris has lost his non-agent status that a typical independent contractor possesses. This determination hinges on "the amount of control retained or exercised by the owner." [FN11]

> FN8. *See Fisher v. Townsends, Inc., 695 A.2d 53, 58 (Del.1997)*.
>
> FN9. *Id*.
>
> FN10. *Id.* at 61.
>
> FN11. *Id.* (citing *E.I. DuPont De Nemours & Co. v. Griffith, 130 A.2d 783, 784 (Del.1957)*).

 *3 In determining whether Mr. Burris is an employee or an independent contractor, the Restatement (Second) of Agency provides this Court with a list of non-exclusive factors to consider:
  (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
  (b) whether or not the one employed is engaged in a distinct occupation or business;
  (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
  (d) the skill required in the particular occupation;
  (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
  (f) the length of time for which a person is employed;
  (g) the method of payment, whether by the time or by the job;
  (h) whether or not the work is a part of the regular business of the employer;
  (I) whether or not the parties believe they are creating the relation of master and servant; and
  (j) whether the principal is or is not in business. [FN12]

> FN12. *Id.* at 59 (citing Restatement (Second) of Agency § 220).

 Defendant contends that Mr. Burris was hired as an independent contractor by the Defendant as evidenced by their "independent contractor agreement." Mr. Burris is also paid by commission only and the Defendant does not withhold taxes from his commissions or provide him with any health benefits. Further, Defendant claims that Mr. Burris is responsible for providing his own business cards, paying for his own licensing fee, and obtaining his own multi-listing membership. Defendant also claims that Mr. Burris manages his own schedules and workload. Accordingly, Defendant contends that My. Burris is an independent contractor with non-agent status.

 Plaintiff contends that Mr. Burris is either an employee or an independent contractor who has lost his non-agent status. Plaintiff argues that the Defendant provides Mr. Burris with an office, office equipment, and also advertises Mr. Burris' listings. [FN13] More important, even if this Court concludes that Mr. Burris was an independent contractor, Plaintiff contends that he has acquired agent-status because of the extent of control retained by the Defendant. Specifically, Plaintiff alleges that Mr. Burris was expected to attend meetings where he would receive education and discuss reasons he could lose his license or be terminated. Further, Plaintiff claims that the Defendant's Policy Manual memorializes the extensive amount of control retained by the Defendant. [FN14] Finally, Plaintiff claims that the Defendant is barred by the doctrine of *res judicata* from arguing that Mr. Burris is not an employee. Plaintiff contends that the Court in *Reichensperger v. Gaston* [FN15] has already conclusively determined that Harrington's real estate sales agents are employees.

> FN13. Plaintiff specifically alleges that Harrington Realty Inc. provided Mr. Burris with a telephone, desk, office furniture, a receptionist to answer phone calls from Mr. Burris's clients, computers, phone lines, and internet access to the multi-list service.
>
> FN14. This is a thirty-eight page document containing administrative and operational policies.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                     Page 4
Not Reported in A.2d, 2004 WL 3030014 (Del.Super.)
**(Cite as: 2004 WL 3030014 (Del.Super.))**

FN15. 1987 Del.Super. LEXIS 1153.

There is no bright line rule for determining whether a person is an employee or an independent contractor because such a determination is dependent upon the facts of each particular case. [FN16] The same is true in assessing whether an individual is an independent contractor with agent status or an independent contractor with non-agent status. [FN17] Because the determination of agency status is highly fact specific and must be decided on a case-by-case basis, this Court finds Plaintiff's argument pertaining to collateral estoppel unpersuasive. [FN18] In this case, the Defendant has presented sufficient evidence that a reasonable jury could conclude Mr. Burris was an independent contractor with non-agent status. However, based upon the amount of control retained by the Defendant, a reasonable jury could also conclude that Mr. Burris was an employee of Harrington Realty Inc. or an independent contractor with agent status. Because both parties have presented sufficient evidence to support their respective position, this issue should be submitted to the jury for their determination. [FN19] Accordingly, both parties motions for summary judgment will be denied.

> FN16. *Fisher,* 695 A.2d at 59 (citing *White v. Gulf Oil Corp.,* 406 A.2d 48, 51 (Del.1979)).
>
> FN17. *Id.* at 61 (citing *E.I. DuPont De Nemours & Co.,* 130 A.2d at 785).
>
> FN18. *See Reichensperger,* 1987 Del.Super. LEXIS 1153, at *4 (holding "There is no absolute rule for determining whether defendant is an 'independent contractor' or an employee and each case must be decided on its own facts....Further, the facts presented in this proceeding do not require a divergence from the earlier Court ruling that defendant serves as an employee for purposes of this motion).
>
> FN19. *See Fisher,* 695 A.2d 53 at 59 (stating that the determination of whether a person is a servant or an independent contractor is a "determination usually made by the factfinder").

**\*4** Even if Mr. Burris is an employee or an independent contractor with agent status, Defendant contends that summary judgment is appropriate because working as a property manager was outside the course and scope of his employment. Defendant claims that Mr. Burris was a real estate agent and was permitted only to participate in the listing and selling of real estate. In short, Defendant contends that Mr. Burris was acting outside the course and scope of his employment because he was not authorized to engage in property management and was in fact performing such services for personal reasons and not for the benefit of Harrington Realty Inc.

The Plaintiff has also requested this Court to find that Mr. Burris was acting within the course and scope of his employment while functioning as a property manager for the co-defendant. Although Mr. Burris was not authorized to engage in property management, Plaintiff claims that there is sufficient evidence to suggest that Mr. Burris believed he was authorized to engage in property management. In addition to performing such services for his own benefit, Plaintiff contends that Mr. Burris was also acting on behalf of Harrington Realty Inc. by procuring future business. Thus, Plaintiff contends that Mr. Burris' actions fall within the course and scope of his employment under the "dual purpose" doctrine.

Under the dual purpose doctrine, even though an employee is primarily motivated for personal reasons, he may still be working within the course and scope of his employment if the employer's business actuates the employee to any appreciable extent. [FN20] In determining whether an employee is acting within the course and scope of his employment, Delaware Courts have followed the Restatement of Agency, Section 228 which provides:

> FN20. *Keating, et al. v. Goldick, et. al.,* 2004 Del. Super LEXIS 102, at *10.

(1) Conduct of a servant is within the scope of employment if, but only if:
(a) it is the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master, and
(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by the purpose to serve the master. [FN21]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                              Page 5
Not Reported in A.2d, 2004 WL 3030014 (Del.Super.)
**(Cite as: 2004 WL 3030014 (Del.Super.))**

FN21. Restatement (Second) Agency, § 228.

Although Mr. Burris' conduct was unauthorized, it still may be within the course and scope of his employment if it was of the same general nature as the conduct he was authorized to perform. Whether property management is of the same general kind of employment as that which Mr. Burris was authorized to perform is a material issue of fact. Similarly, whether Mr. Burris was performing property management services to benefit himself or for the benefit of Harrington Realty Inc. is also a material issue of fact. These material issues of fact should be resolved by the jury.

**\*5** In sum, the issues of whether Mr. Burris was an employee or independent contractor and whether he was working within the course and scope of his employment are material issues of fact that should be submitted to the jury to decide. Accordingly, both parties' motions for summary judgment will be denied and these issues will be presented to the jury with special interrogatories.

Defendant's final motion for summary judgment involves the testimony of the Plaintiff's sole expert, Mr. David H. Fleischer, P.E., who is an engineering consultant from Fort Washington, Pennsylvania. More important to Defendant's motion for summary judgment, however, is what Mr. Fleischer is not. Defendant contends that Mr. Fleischer is not a Delaware licensed engineer and has never been associated with any Delaware engineering firms. Defendant further contends that it is necessary for the Plaintiff to produce an expert who can testify to the local standard of care owed by a property manager to a tenant in Delaware. Because Mr. Fleischer is Plaintiff's sole expert and is not qualified to testify as to Delaware's local standard of care, Defendant claims that summary judgment is appropriate because the Plaintiff cannot establish the standard of care owed by the Defendant. To support her position, Defendant relies upon the decision in *Miley v. Harmony Mill Ltd. Partnership* [FN22] and this Court's decision in *Norfleet v. Atlantic Realty, Co., Inc.* [FN23]

FN22. 803 F.Supp. 965 (D.Del.1992).

FN23. 2001 Del.Super. LEXIS 357.

In *Miley,* the plaintiff was injured as a result of a slip-and-fall accident that occurred in the shower. More specific, the plaintiff was injured when his elbow hit the glass shower door which shattered upon impact. The plaintiff brought an action against the defendant based on several different theories of liability including common law negligence. The plaintiff contended that the landlord had a duty to maintain the premises in a reasonably safe condition and violated that duty by not replacing the shower door. The plaintiff alleged that the door was unfit, unsafe, and defective because it was made of untempered and easily shattered glass which created a foreseeable risk of harm to the tenant.

Pivotal to the resolution of the case was the undisputed fact that the annealed glass used in the shower door was in compliance with the Code when it was installed. Although the Code eventually prohibited the use of such glass, the Code provided that it was not intended to have a retroactive effect unless explicitly provided by statute. The section of the Code prohibiting the use of annealed glass was not required by statute to apply retroactively. Accordingly, because the Code specifically addressed and permitted the defendant's alleged negligent conduct, the defendant filed a motion for summary judgment contending that there could not be a finding of negligence. Although the Defendant was in compliance with the Code, the Court held that there was still a material issue of fact as to whether the duty to maintain the premises in a reasonably safe condition was breached by the Defendant for not replacing the glass. [FN24] However, because the statute specifically addressed and permitted the continued use of annealed glass, the Court concluded that in order to prevail the Plaintiff would have to prove that the standard of care in the leasing community was higher than the standard of care mandated by statute. [FN25]

FN24. *Miley,* 803 F.Supp. at 970.

FN25. *Id.*

**\*6** This Court was confronted with a similar factual scenario in *Norfleet.* In *Norfleet,* the plaintiffs were injured as a result of a fire that occurred in their apartment building. The plaintiffs brought an action against the defendants asserting multiple theories of liability including claims based upon common law negligence. The plaintiffs argued that the defendants were negligent because the building provided only one means of egress and did not possess a fire escape. The plaintiffs further alleged that the dwelling units were unsafe because the apartment building did not possess a segregated stairwell or fire doors that were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 2004 WL 3030014 (Del.Super.)  
**(Cite as: 2004 WL 3030014 (Del.Super.))**

Page 6

satisfactorily rated. Because the alleged negligent conduct was already highly regulated by fire codes and because the Fire Marshall concluded that the defendants were not in violation of any applicable codes, the defendants filed a motion for summary judgment arguing that there could not be a finding of negligence as a matter of law since they were in compliance with the applicable codes.

This Court found that the defendants were in compliance with the applicable codes and granted the defendants' motion for summary judgment pertaining to the plaintiffs' negligence per se claims but initially denied their motion for summary judgment regarding the claims based upon common law negligence. [FN26] With regards to the claims based upon common law negligence, this Court found that summary judgment should not be granted in favor of the defendants simply because they were in compliance with the applicable code. [FN27] However, to succeed on a claim for ordinary negligence after it has been determined that the alleged negligent conduct was actually in compliance with the applicable codes, the plaintiffs would have to establish that the local standard of care in Delaware is higher than the minimum standard of care mandated by the applicable codes, statutes and regulations. [FN28] Accordingly, this Court held that an expert familiar with the local standard of care would be necessary in order for the Plaintiffs to meet their burden of proof in establishing that the local standard of care is greater than the base-line standard of care provided by statute. [FN29]

> FN26. *Norfleet v. Mid-Atlantic Realty Co., Inc.,* 2001 Del.Super. LEXIS 86, at *18.
>
> FN27. *Norfleet,* 2001 Del.Super. LEXIS 86, at *25.
>
> FN28. *Id.*
>
> FN29. *Norfleet,* 2001 Del.Super. LEXIS 357, at *18.

Defendant, relying upon the decision in *Miley* and this Court's decision in *Norfleet,* contends that summary judgment is appropriate because the Plaintiff has failed to produce an expert who can testify to the local standard of care. However, as explained above, the holdings in these cases pertain to situations where a code or statute specifically addressed and permitted the alleged negligent conduct. If the alleged negligent conduct is specifically authorized or permitted by the applicable statutes, codes, or regulations, than an expert is necessary in order to establish that the standard of care in the relevant community is higher than the standard of care created by such regulations. However, if the applicable regulations neither address nor permit the alleged negligent conduct, such an expert is not required because it is unnecessary for the plaintiff to prove that the local standard of care is greater than the base-line minimal standard created by the codes. In this case, there was no stipulation between the parties or a finding by this Court that the Defendant's conduct conformed to any applicable code, statute, or regulation. Because there has been no determination that the Defendant's conduct was in compliance with any applicable code, statute, or regulation, it is unnecessary for the Plaintiff to establish that the local standard of care is higher than the base-line standard of care created by statute.

*7 Even if the Plaintiff does not have to prove that the local standard of care is higher than the base-line standard of care mandated by statute, Defendant maintains that the Plaintiff must still produce some expert who can testify and establish the standard of care owed by a property manager. Defendant argues that property managers, like professionals, are held to an elevated standard of care which can only be established through expert testimony. Defendant contends that the Plaintiff cannot establish any standard of care because the Plaintiff's sole expert is an engineer and not an expert in property management.

This Court is unpersuaded by Defendant's argument. In *Norfleet,* this Court stated "The Court is not persuaded that apartment owners and managers are "professionals" in the way that term is used in the Pattern Jury Instructions and the Restatement (Second) of Torts § 299A." [FN30] In requiring expert testimony in *Norfleet,* this Court further stated "Even though the Court has not chosen to accept that apartment owners and managers are professionals, expert testimony to the local industry practice will be helpful and required." [FN31] Although the Plaintiffs in that case were required to produce expert testimony in order to establish the local standard of care, it was not because the apartment owners and managers were considered "professionals." Rather, as discussed above, it was because the applicable codes and statutes already addressed and permitted the alleged negligent conduct. Accordingly, an expert was required because it was necessary for the Plaintiff to prove that the local standard of care was higher than the standard of care required by statute.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 7
Not Reported in A.2d, 2004 WL 3030014 (Del.Super.)
**(Cite as: 2004 WL 3030014 (Del.Super.))**

> FN30. *Norfleet,* 2001 Del.Super. LEXIS 357, at *16.

> FN31. *Id.* at *18.

Because this Court does not consider property managers as "professionals" in the sense that they are held to an elevated standard of care, expert testimony is not always necessary in order to establish the appropriate standard of care. Expert testimony is generally required when the "understanding and analysis of [the] issues [is] beyond the ken of the typical jury." [FN32] Expert testimony may also be required when it is necessary for the plaintiff to prove that the local standard of care is higher than the standard of care mandated by statute. However, those facts are not present here. The negligent acts in this case concern a loose handrail and a faulty doorframe. Such issues are not beyond the understanding of the typical jury and thus do not require expert testimony. Accordingly, Defendant's motion for summary judgment is denied.

> FN32. *Mazda Motor Corp. v. Lindahl,* 706 A.2d 526, 533 (Del.1998).

Based on the aforementioned reasons, both parties' motions for summary judgment are hereby *denied.* IT IS SO ORDERED.

Not Reported in A.2d, 2004 WL 3030014 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.